**Mary M. TORRES; Davis Solomon Torres, Jr.; Eli Joseph Torres, a minor; Estate of Solomon Eli Torres, aka/ David Solomon Torres, Plaintiffs—Appellees,**

v.

**L. RUNYON, individually and in his official capacity as a Correctional Officer, Defendant—Appellant.**

No. 02–15273.

D.C. No. CV–98–02211–WBS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 2003.

Decided Nov. 6, 2003.

Roger E. Naghash, Law Offices of Roger E. Naghash, Newport Beach, CA, for Plaintiffs–Appellees.

Gregory Scott Walston, AGCA–Office of the California Attorney General, San Francisco, CA, Jesse Manuel Rivera, Moreno & Rivera, Van Longyear, Longyear O'Dea and Lavra, Jill Theresa Bowers, Attorney General's Office, John Andrews Mason, Adams and Mason, Sacramento, CA, for Defendants.

Jeff L. Corzine, Adams, Mason & Corzine, Sacramento, CA, for Defendants/Defendant–Appellant.

Before GOODWIN, KLEINFELD, Circuit Judges, and JONES, District Judges.[*]

MEMORANDUM[**]

Correctional officer Lawrence Runyon ("Runyon") shot and killed inmate Solomon Eli Torres a.k.a. David Solomon Torres ("Torres") from an observation tower during a prison yard melee between two prison gangs involving eighteen inmates of California's High Desert State Prison. Torres' estate filed an action alleging several federal constitutional claims including the excessive use of force, and a state wrongful death claim.

Runyon brings this interlocutory appeal from the district court's denial of his motion for summary judgment on qualified immunity grounds. We have jurisdiction under 28 U.S.C. § 1291 for interlocutory appeals from the denial of qualified immunity in a claim of excessive force involving disputed facts. *Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir.2003) (citing *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001)). We reverse the district court's denial of Runyon's motion for summary judgment on qualified immunity grounds.[1]

We analyze qualified immunity with two separate and sequential inquiries following the familiar framework established in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The threshold inquiry is whether a state official violated a constitutional right. *Id.* at 201. If the official violated a constitutional right, he or she nonetheless may be entitled to qualified immunity if the right was not clearly established such that a reasonable official "would understand that what he is doing violates that right." *Id.* at 201–202; *see Estate of Ford v. Ramirez–Palmer*, 301 F.3d 1043, 1049 (9th Cir.2002) (*"Saucier*'s key point is that the qualified immunity inquiry is separate from the constitutional inquiry.").

In a recent case, *Marquez v. Gutierrez, supra*, we applied *Saucier* to an excessive use of force claim and underscored the significance of analyzing the constitutional right apart from qualified immunity. *Marquez*, 322 F.3d at 693 ("[Corrections officer] Gutierrez's claim of qualified immunity is not defeated simply because a triable issue of fact exists as to whether his decision to shoot [inmate] Marquez was malicious."). Specifically, even if Torres might establish an excessive use of force, Runyon still may be entitled to qualified immunity for reasonable conduct under the circumstances he faced.

---

[*] The Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation.

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Runyon also claims that the district court erred in denying summary judgment on Torres' state wrongful death claim. Immunity extends to an officer's use of deadly force if "the circumstances reasonably created a fear of death or serious bodily harm to the officer

or to another." Cal.Penal Code § 196; *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 349, 54 Cal.Rptr.2d 772 (1996). A public official has immunity for "an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion is abused." Cal. Gov't Code § 820.2; *Martinez, supra*. We find that Runyon's conduct was reasonable under the circumstances as discussed in this decision and grant summary judgment on state immunity grounds.

In the district court proceedings, the parties disputed whether Torres was an aggressor or victim in the prison yard melee. Runyon and several witnesses stated that Torres was an aggressor, standing upright and delivering kicks and blows. Torres' witnesses, in turn, stated that Torres was on the ground when Runyon shot him. Torres also offered forensic evidence tending to show that the entry and exit wounds were consistent with Torres lying on the ground, and offered Runyon's admission that he specifically targeted Torres as an aggressor.

The district court found that the dispute about whether Torres was a victim or aggressor created a factual issue of Runyon's motive for purposes of the excessive force claim. The court further found that this factual dispute also left the reasonableness of Runyon's conduct in question, thereby precluding summary judgment in Runyon's favor on the qualified immunity defense.

Accepting Torres' version of the facts, which placed him on the ground as a victim of other inmates' assaults, a reasonable fact finder might view Runyon's use of deadly force against Torres as an act that violated Torres' Eighth Amendment right. *Marquez*, 322 F.3d at 692. However, there is no evidence that Runyon knew Torres nor carried any animus toward him. At most, Runyon may have been negligent in shooting the wrong person. But we need not resolve this issue because we find Runyon's conduct was reasonable under the following analysis.

The next prong of the qualified immunity analysis is " 'a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?' " *Jeffers*, 267 F.3d at 910 (citations omitted). The law concerning Eighth Amendment

protections against excessive force was established in *Whitley v. Albers*, 475 U.S. 312, 320–321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (factors affecting whether force is excessive include "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted * * *. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.") (internal quotation and citation omitted). Moreover, Runyon worked under the same institutional use of force policy this court held to be constitutional in *Jeffers*, 267 F.3d at 915. The governing law and institutional policies established clear guidelines for Runyon's use of deadly force in a prison yard melee where the use of non-deadly force had proven ineffective.

We apply the reasonableness standard to Runyon's actions in the actual moment "based upon the information the officer[ ] had when the conduct occurred" and not in perfect hindsight. *Saucier*, 533 U.S. at 207. Runyon and other corrections officers yelled repeated verbal warnings to "Get down!" Corrections officers in the prison yard deployed pepper spray. Runyon fired three warning shots from the observation tower and another officer fired once to little avail as the two prison gangs continued fighting in groups of three to five inmates. From his viewpoint in the observation tower, Runyon believed that the inmates on the ground were defenseless as they received kicks and blows from other inmates. And the evidence is uncontradicted that Runyon aimed at and intended to shoot the inmate whom he saw kicking an unconscious inmate to death, whether or not he hit the wrong person or

was mistaken about which person was hit. Runyon fired one shot each at two groups and hit two inmates, including Torres. The melee ended soon thereafter.

Given that the violent assaults in the prison yard continued unabated despite non-deadly force tactics, Runyon used deadly force to secure the safety of inmates he believed to be defenseless and at the risk of serious bodily injury. The state Department Shooting Review Board found that Runyon acted within established guidelines. We cannot say that Runyon's conduct was unreasonable under the circumstances. Therefore, Runyon is entitled to qualified immunity from the Torres estate's claims arising out of the prison yard shooting.

**REVERSED.**